Please be seated. The second motion on this morning's call, 209-418, in the matter of a petition to disconnect certain territory located in Camp County, Illinois, from the Village of Campton Hills. On behalf of the MLA, Mr. Robert Villa, on behalf of the MLA, Mr. Hal Lawrence. Good morning, counsel. I'm sorry for the late start. Mr. Villa? May it please the Court, Your Honors. Good morning. Good morning. Robert Villa, on behalf of the appellants, the petitioners below, hold small piece of housekeeping. I don't want to belabor the matter. The Village appears to have brought a visual aid with them today. I've seen the visual aid before. It's not an actual exhibit within the record. It's different from anything they've presented. I simply would note an objection now and then proceed with my... Not that there's an objection. This isn't a trial court, I understand, but I just simply noted my point for the Court. Thank you. Your Honors, the petitioners in this case are homeowners. The Fox Creek petition is how it's known below. They appeal from the grant of summary judgment entered by Judge Cole below, finding that their disconnected territory, the territory that they described in their petition to disconnect, was not on the Village's border. There are not very many facts in this case, and if the Court is generally familiar with what happened below, I'll dispense with a full rendition. I think you can dispense with the facts, period, and I think we've got a number of issues we really need to discuss, most important of which is your interpretation of the word border. Correct. And your interpretation of the word border allows for more than one border. Isn't that correct? No. No, we don't believe so at all. There can only be – the term border doesn't have, I would say, a multiplication factor to it. A border may exist in different areas of a particular municipality, but there is not a multiplicity of borders here. A border is plainly not defined or, you know, I should say it's a disconnected statute. It doesn't define it, it doesn't confine it to a particular area, it doesn't expand it to mean anything else. No other statute takes border and says it needs to be qualified if it's a border in a certain area, it's not a border. What is in fact the reality here, from a legal effect point of view, is that the corporate boundaries and corporate limits of a village establish the border between what is the village and what is not the village. And in this particular case, the actual corporate boundary, the corporate limit that we're talking about here, isn't artificial, I didn't create it, the village created it when it incorporated it. And it had a great legal effect even prior, or almost immediately prior, to when we filed our petition. As we noted throughout the record, there was a case before the circuit court, 07-MR-540. The village of Campton Hills was in litigation with the Wasco Sanitary District. My clients are part of the Wasco Sanitary District, as is the parcel of land upon which their disconnection territory sits. The forest preserve parcel. The forest preserve parcel. And that forest preserve parcel is 95 acres. It's also part, the 95-acre parcel was at issue in the 540 case, the Wasco Sanitary District case. But it's part of a 333-acre large area of unincorporated area that is outside the corporate boundaries. That's not an argument that I've made. That's a stipulated argument that the village of Campton Hills made in the case below. As the record shows, they stipulated that the exact wording is they stipulated that the forest preserve parcel was not contained within the organized boundaries of the village of Campton Hills. Now, of what significance was that? Substantial. It prevented the village of Campton Hills' authority to absorb the Wasco Sanitary District. In other words, it said this area being outside of your corporate limits prevents your corporate authority from assuming the Wasco Sanitary District. And now the sanitary district exists independent of the village. What you're saying is that anybody that adjoins the forest preserve cannot be annexed by a city that totally surrounds the forest preserve and the subdivision or the town that is attempting to disconnect from the annexation. I'm sorry, Your Honor. I didn't, if I understood. Do you want me to repeat it? Please. What you're saying to me is, based upon your statements regarding the Wasco Sanitary District and the 95-acre forest preserve district, that as a matter of law, if you are a parcel of property that has an adjoining border touching a forest preserve district, that you are not required to remain in the city and that you have the right to disconnect because of your relationship, your contiguous border with the forest preserve. No. Since the forest preserve cannot be annexed, neither can you. No, that's not our argument. Our argument is simply this. This case will have operative effect for all future disconnection cases, including many that may come in villages that are soon to be enacted. We're saying that border means corporate limit. It means corporate boundary. It's irrelevant that this is a forest preserve. In fact, the fact that it is a forest preserve helps us understand the meaning of the term border as the legislature intended it in the statute. Whether or not this is a forest preserve, my clients are adjacent to the corporate boundary. And that corporate boundary was previously determined to have such strong legal effect that it's outside the village of Campton Hills and prevented their legal thoroughfare. Why is there a corporate boundary there? Because the village of Campton Hills drew it that way when they incorporated themselves. No, the corporate boundary is there because the forest preserve is there. If the forest preserve wasn't there, you would be totally surrounded by the city. Well, if the forest preserve was not there and it was an unincorporated parcel, the village still could have decided, as it did here, to draw its corporate boundaries around it. If you look at the map that's in the record, there are other forest preserves that are within the village of Campton Hills that were not boundaries drawn upon. And in fact, I think the record reflects that the original petition for incorporation included this area. And the village filed a subsequent petition and removed it purposely. The entire 338-acre parcel was removed. Let me just ask another question somewhat related to that. There is also the requirement that the territory seeking to be disconnected not be wholly bounded. That's the terminology upon disconnection. That's correct. The village's argument that the forest preserve should be ignored as an artificial whatever barrier, why isn't that correct? In the first instance, the Village of Long Grove case is instructive as to what this court has determined wholly bounded means. Wholly bounded means bounded on all sides by another municipality. In the Village of Long Grove case, it was an annexation case, and they didn't. And I'm not asking the court to import or take away from the annexation statute and bring something here. We have a term, wholly bounded, in both statutes. It needs uniform application, as does our argument for border. In the Village of Long Grove case, a small 210-foot strip that was unincorporated prevented the court and the Village of Long Grove from annexing property because that piece of property was not wholly bounded. Indeed, if you look at the map to that case, which I think is Exhibit 7 of the appellate argument or to the appellate opinion, it clearly shows that that unincorporated parcel on the other side of it, if you will, the Village of Vernon Hills was there. So it had another village on the outside. It was surrounded by other municipalities. But it was clearly not any municipality. It was unincorporated. And so that parcel was not wholly bounded. We have the same issue here. We have a wholly unincorporated area outside the corporate limits, stipulated corporate limits, limits that prevent legal authority of the village from operating. And that encompasses the entire southerly border of our petition to disconnect territory for more than half a mile. One of the things I mentioned just a moment ago is about importance. This goes to answer your question, Your Honor. Why is the village's argument, why does it fail in that regard? Nothing in the disconnection statute, nothing, talks about forest preserves, talks about false parcels of land, talks about things that are relevant to annexation. The disconnection statute is a citizen right. That's why the case law says it is supposed to be interpreted in favor of disconnection. Annexation is an offensive move by the villages that has certain restrictions and certain rules and regulations because villages are creatures of statute. So villages only have the authority that is given to them by the legislature. Now, the village cites to a particular section of the annexation statute that refers to forest preserves. That's not in the disconnection statute. And the Supreme Court, in the case we cited, King v. First Capital, and I believe this Court's prior decision in the other disconnection cases from the village of Campton Hills, makes clear. The Court cannot, under the guise of statutory construction, expand, contract, add new conditions, or wholesale annex or import from another statute into this one. The disparity of the legislature's determination makes clear. Disconnection has nothing to do with whether or not this forest preserve exists. If the term forest preserve had been used in the disconnection statute and we wanted to look as to how the forest preserve and its issue has been decided in another case, that would be one thing. And it would be equal to what I just mentioned with regard to Holy Boundary. Holy Boundary was determined in one case. It's to be determined in another with similarity. There is absolutely nothing of relevance with regard to the forest preserve in the disconnection setting. We have a very large, unincorporated area stipulated to be outside the village of Campton Hills corporate borders. There cannot be internal boundaries. There's this side of this table and that side of this table. If there's an unincorporated area on this side... Are you sure there's a stipulation that they were outside the borders? Absolutely. Not within the borders. I'm sorry? To me, there's a difference between being outside the borders versus not being within the borders. And the difference is the similarity or the dissimilarity between a Cheerio and a Kix or a corn dog. Well? That between a donut and a Bismarck. There, this is the stipulation at the record C-298. And this is the village of Campton Hills stipulation signed by counsel who's about to argue. As alleged in the complaint filed in this case, the village of Campton Hills does not include all the territory of the Wasco Sanitary District, comma, there being a parcel of approximately 95 acres, which is included in the Wasco Sanitary District, which is not within the corporate limits of the village of Campton Hills. I mean, there can be no more clear... Okay, what you just said is what I just said. Right, it's not within the village of Campton Hills. Which isn't what you said previously. Which was, you said, they stipulated that it was outside. I said, there's a difference between saying outside and saying not within. Well, we would submit that there's no legal difference between the two. There's... If we are outside the state of Cheerios or a bowl of Kix, and you understand that one has a hole in the middle of it, and even though that hole is in the middle of it, you can say that the milk inside that hole is not within, but it also isn't without the borders of the Cheerio? It certainly isn't inside the borders of the Cheerio, to use your example. I agree it isn't, but it's not necessarily outside the borders of the Cheerio. How is it not outside the borders? To use your... After the Cheerio, we were talking about Cheerios, it's confined by the circles of its shape, and it's either inside that shape or it's not inside that shape. This is going to cause... I mean, take a look at what we said. We pointed out to the court about... We did below to Judge... Before Judge Colwell. Irregularity of boundaries, or how the boundaries of the villages looks, has absolutely no meaning whatsoever. You're going to have villages that may look as the village of Volo does. We cited that case. As the village... In the village of Meadowa case, which we cited, that has a map attached to it. You're going to have villages that look like my fingers, where there's transference of property, there's big interjections, there's things crimped into the middle. How are we ever going to fashion a finding where now the petition to disconnect is going to have a new requirement, that somebody figure out where a border is and whether it's... We're going to have a new definition of internal or external borders. You can be totally surrounded and not be within corporate limits. But I don't believe it is correct to say that you're outside the border of a particular city or village, but you are surrounded by it. And your fingers are an example of a situation where your fingers aren't surrounded, or at least the spaces between your fingers aren't surrounded. But what difference does that make for purposes of the definition of border? I'm suggesting to you that when it comes to solid geometry, there are differences between spheres and filaments. Okay. And it is that discussion that is not anywhere present in the statute. And if we take the definition of border and we expand it or give it new meaning or find new basis to use it, we're going to have a distinction. And I'll give you a perfect example. We cite it to the special district statute, which in fact applies to that particular area of Forest Preserve. What we're going to have is clearly a situation where a statute that defines that edge, the edge of the Forest Preserve District, as a border, when you stand on the other side of it, it's not a border. Not in this case, perhaps, because it's not a submerged waterway right next to it, but it's of no difference. If you rule that a Forest Preserve has some kind of impacted meaning on what a border is and it somehow negates corporate limits, I mean, would the village of Campton Hills be arguing if this particular Forest Preserve was, were they to use their terms, on the western side, that somehow if the corporate limit ended there and the western side outside the village, not included within the village, was the Forest Preserve, that this petition was not on the corporate limits of border? And how can you have a stipulation, how can you have a border that says, that basically by legal effect makes our course, our disconnected territory on the corporate limits, which on the other side is not the village of Campton Hills, and not say that's a border? Well, are all dividing lines borders? Isn't that a dividing line? No, it's a corporate limit. It divides where the village is, its authority, and where it is not. And I think that there's no border. So you're saying that's a border? That is a border. What about the word, the, in front of the word border? The border? Yes. I mean, we have to look at every single word in determining the meaning of the statute. And the word, the, implies one border on the periphery, does it not? No. The word, periphery, is added, and I think that's the problem with these maps. They're asking you to make a visual interpretation of things, as opposed to reading the term in the statute. Well, even if we don't look at anything? The border means there is one. That's correct. There is one. And there is one border that is defining the village of Campton Hills, circumscribes or confines it, and that is on the left and on the right and on the top and on the bottom. It's where they drew it. Because on the other side of that line is not the village of Campton Hills. Much like you say in the center of this cheerio, in the center of this space is not a cheerio. Are you aware that there is something that only has one surface? It's called a Mobius strip. You might want to look it up. It would probably be entertaining. I will look it up. I will finish only with this. Well, you did, but you have some time on rebuttal, but if you want to take a minute to finish your statement. I would just ask that the court consider this final fact, and then I'll sit down. What I'm asking you for is the consistency of using the term border, boundary line, and limit as it has been used by this court in other disconnection cases. The village of Elan, the village of Mettawa, and other cases have used that exact language in order. But it's all been with respect to the periphery and the fringes, has it not? No. There isn't any case that... There's no discussion about periphery or fringes that has never been addressed. But the property itself has been on that area, as opposed to right smack in the middle. Well, I'll submit to the court this. There is no right smack in the middle. You need only look at page one of the response brief that's in front of you with the map that's there. This case, this petition is no more smack in the middle than if you look to the top of the map or to the right of that particular area, and there's a white border right there. Is that more smack in the middle? None of it is smack in the middle. This map right here will show you the white areas. But none of it is on what would be considered a periphery. We would disagree. The court is going to find today either that corporate limits and boundaries establish borders for municipalities, or it does not. We submit that a border, the most seamless and practical application of it, even consistent with the other statutes, results in a need to reverse the summary judgment below. Thank you. Thank you. Mr. Morris. Good morning. Good morning. My name is Hal Morris. I'm with Jennifer Crotchville. I represent the village of Camden Hills. From what I've heard this morning, I think reference to the map is appropriate. The map is precisely what Judge Caldwell needed to consider in what the disconnection statute specifically looks to when we look to whether an area is appropriate for disconnection. I think it's appropriate that we pause first and recall that the disconnection statute requires the petitioners to demonstrate compliance with each of the statutory elements. The two elements that were at issue in this case before the trial court were the on the border and the wholly bounded. To say that no case has talked of periphery or fringe as being the appropriate inquiry in a disconnection statute I'd submit is incorrect. The Punky case from our Supreme Court made very clear and was very specific when it said it was within the legislative sphere to determine the size of the premises which under the circumstances of the act might be detached from the fringes of cities and villages. And that is precisely what we as the village are urging is the appropriate way to view the disconnection statute. If we look at the words of the statute as the court has pointed out, we're focusing on what do they say and what do they mean. We look at the border but within the boundary. The border, I would submit to the court as this court has found, should be given its usual and customary meaning. We don't need to strain to figure out what the border is. Throughout the briefs in this court as well as in the trial court were the usual and customary meanings of border. Both parties cited to Webster's and that's instructive. Webster's tells us specifically it is an outer part or edge. Now, of course, there are other definitions of border. The decorative heaven, a scourge of things like that. And I'd submit those really aren't at issue here. But if we look at the outer border or the outer part of edge as Webster's tells us in its ordinary meaning, we take it with the Supreme Court's decision in Punky which says the intent of the disconnection statute is to look to the fringes of villages or cities because the fringe areas might not have the same benefits for municipal services. We come squarely into this case in a demonstration as to why this piece of property, this parcel, this territory is not on the border. Now, what about counsel's argument that border is commonly understood also to be a dividing line between two political subdivisions, let's say? The statute specifically says upon the border but within the boundary. I would submit to the court that within the boundary is what you are referring to. The boundary is the bounds by which a municipal entity, a creature of statute, can exercise its authority. What the statute says is you have to be on the border yet within the boundary where the municipality can exercise its specific power. We don't look to statutes to have surpluses, to have repetitive words, and that's what the petitioners have realized that they mean the same thing. I submit to the court they do not. What we need to look at is this area on a border, the border, and is it within the municipal boundaries, which says where a municipality can essentially have a legislative right over it. It's in the boundary, but it is not on the border. Why was the trial court correct in granting summary judgment instead of going to a trial? There was no question of fact that was before the trial court, nor I'd submit even now as to— No question of material fact. You always have to say material fact. You do, but here there's no question of fact I would submit. Is it stipulation or it's uncontested? It's uncontested where it is. It's uncontested where the forest preserve is. It's uncontested what the map of the village looked like at the time in December of 2008. It was purely a question of law that the court needed to look at and say, is this request a request that would seek to say is it on the border? I would agree with the court that if Judge Caldwell had looked at what was the impact of taxes on city services, that could have been a question of fact, and in fact in other disconnections that came to this court was. But here there was no question of fact. Summary judgment was appropriate, and what Judge Caldwell did is he looked at it not once, not twice, but actually three times. There was an initial hearing on December 10th. He asked us to come back with the map, which is the particular, essentially the map that we have today without the numbers of other disconnections, which if the court prefers we can show the court, heard more argument and granted summary judgment. There was then a request for reconsideration, and Judge Caldwell reconsidered what he did and affirmed his decision that this is not on the border. Well, doesn't the forest, isn't there another requirement that it not be wholly bounded? Yes. And how do you then factor in the forest preserve here? There's two ways. And if I may, if I can show the court the map, it's perhaps easier to see it, or it's figure one in your. Yeah, we have, I think we all have figure one. Okay, figure one. It's two ways. The specific area of the Fox Mill subdivision is specifically when you look at it, it is, I would submit, in the middle of the village. If you drew a line around it and drew a line around the forest preserve, it's all the village of Campton Hills. It is very clear that under disconnection law, this court and other courts have approved looking to annexation for guidance when dealing with various issues. This court has done that. The annexation law specifically provides that a forest preserve is an artificial barrier that you can essentially hop over, or phrase differently, collapse to get contiguity. Here, as an artificial, if you will, area, if you collapse it or hop over it, it's all the village of Campton Hills. There's nothing else there. It is wholly surrounded. It's wholly bounded by the village of Campton Hills. This would be far different if this case were, in fact, at the edge, at the fringe, as the Supreme Court says. But it's not. This case is, as they say, in the middle. It is within the general boundaries of the village, of course, but it is not on the border of the village. The counsel makes an argument that one statute, annexation is for the village, disconnection is for the people. And the fact that forest preserve is not mentioned in the disconnect statute should mean something. How do you answer that? I guess I would answer it two ways. One, I'm a bit surprised by that statement because in the petitioner's brief, they specifically relied heavily on what they referred to as the special district statute. So there we're certainly looking outside of the disconnection statute itself. Secondly, I would submit to the court that, yes, you are correct that there is not a mention of the forest preserve within the disconnection statute itself, but when trying to determine and interpret that statute, this court has held on numerous occasions that annexation law is a place that we can look. By looking to annexation law, yes, annexation is done by the government, so to speak. Disconnection is an action that can be against the government, but not necessarily. The disconnection statute also provides a right of disconnection that can be initiated and essentially controlled through the municipality or the political subdivision. So I would submit it's not entirely correct to say that it is simply a public or a citizen right. It's a statutory right, and as a statutory right, you need to look to the words of the statute, and the words of the statute are very clear that it's not unbridled. You just can't disconnect because, quote, unquote, you want to. You can disconnect only if you meet the statutory requirements. Here those requirements are such that I think Judge Caldwell was correct in finding that two of them, the upon the border and the wholly bounded, were not met. When we look specifically at what we have here, I think it's best to look at it in the context of all the definitions that have been put up by this court, the Supreme Court, and the common understanding of border, and that supports the decision of the trial court and the decision we urge that this court adopts as well. The upon the border identifies, as Justice Zenoff has indicated, that there is a border to the village, and that's what we're urging. The Supreme Court, in looking at the statute, granted it was a different version of it, but this language is the same, the upon the border but within the boundary language. It was very clear that the intent of the disconnection statute goes to disconnection from fringes. I would submit there is no reasonable argument that this is a fringe. The fringe would be, as Webster's tells us, the outer edge, the perimeter. That is the common definition. We are not urging the court to either adopt a new definition. We're not urging the court to change the definition. We're not urging the court to try to engraft something on the statute. When this court has looked at, in other cases, the Long Grove case, for instance, which was mentioned earlier, it looked and it said if you're on that border, we'll allow a contiguous adjacent interior tract to be disconnected as well. This court, nor any other court, has ever said we'll let you come from the inside out. It's always from the outside of the village in. What is telling in its lack in both the briefs before this court as well as the trial court is there is not a single case cited, much less one that I would submit the courts have decided, where this type of disconnection request has been granted as being appropriate. Why? Because that's not what the statute provides. When you look at the actual village of Camden Hills as Figure 1, it is clear that there's a northern, southern, eastern, and western border. Although those borders may be irregular in shape, that they're not a perfect square or rectangle, they nonetheless say what is the border, what is the fringe, what is the outside, what the cases look to. That's what is lacking here is any attachment of this disconnection area to that. As the court pointed out in the Cheerio example, just because there's milk in the middle of the Cheerio doesn't mean it's outside the border. It's still within the border, it's simply just outside the jurisdiction of Cheerio's, its milk. Here, what we have is we have something that's within the village of Camden Hills, within its boundaries, but not at its border. Even if we can hop past that, and I submit that we cannot, I suppose we have to drink the milk to do it, it still is wholly surrounded or wholly bounded. That milk in the middle of Cheerio, by anyone's estimation, is wholly surrounded by Cheerio. And that's what we have here. So being not on the border and wholly surrounded, I submit to the court that the trial court was correct in its grant of summary judgment and that there was no material question of fact presented because there were no questions as to where this was. And we would urge this court to affirm Judge Caldwell in his grant of summary judgment in favor of the village and in opposition to the petition. Well, again, it's just to maybe go over one other point. Again, it's wholly bounded only if we take the annexation concept of contiguity and collapse the forest preserve or label it an artificial barrier and ignore it. And what is there? There isn't anything in the disconnect statute that talks about contiguity or artificial barriers. So why should we do that? Why do we look there? Because I don't think that is actually correct when we look at the area they sought to disconnect. If we use the Cheerio example again, that little area, if we disconnect the milk and just crush the Cheerio, it's wholly bounded clearly. But if we leave the milk there, it's still all surrounded by the village of Campton Hills. It is wholly bounded. And why is that a logical or a sensible way to look at it, putting aside that the Supreme Court has said you look to the fringe? What is the purpose of disconnection? It's to get out of, if you will, a municipal boundary, therefore to get out of municipal responsibilities for that area. Here, it's in the middle, and they're saying, we want out. It's an attempt to have someone, if you will, eat away at the municipality from the inside out. When you look at the map, which is Figure 1, and you look at it or you think of it as the Cheerio or the donut or whatever other fruit we're interested in this morning, it is all around village of Campton Hills. There is that little area of milk, the so-called forest preserve, but nonetheless, it's wholly surrounded. If we go the next step to the annexation statute simply for guidance not to import information, the guidance there is that it is sensible and it is what the courts have done is ignore that. Under either review I submit to the court, it's wholly bounded. On top of that, I don't think we reach wholly bounded because it's not on the border, but nonetheless, if either fails, the disconnection petition must fail as well, and that's why we believe and urge this court to affirm Judge Caldwell's grant of summary judgment. Thank you, counsel. Thank you. Mr. Bielak? Thank you. I have three brief points. First, we did cite the forest preserve, the special district statutes, to make this point. Does the village of Campton Hills have authority to regulate the parcel, the 338-acre parcel? No. It's not within its corporate boundaries. Does the village of Campton Hills have the ability to absorb another layer of municipality and sanitary district? No. Why? Because a large section of it is outside its corporate authority. It is outside the village of Campton Hills. There is no other way to describe this. There is a provision, not a provision, but a requirement in the disconnection statute, Mr. Morris mentioned, that it be on the border and wholly within the village. Well, that's what this particular parcel is.  Would it affect the village of Campton Hills' rights to annex or do anything? Annexation is not even an issue here. There's no annexation going to be going on in this case. What we have is an attempt to take a concept in the annexation statute, not by court order, not by opinion or interpretation, but the wholesale lifting of text from one section and bringing it into the disconnection statute. It wasn't put there for a reason. The legislature is given that right to make that disparate type of distinction. Number two, I mentioned, the counsel mentioned the Bunke case, and I apologize for not mentioning it earlier. That was a constitutional argument case in 1936 dealing with whether or not due process and equal protection were at issue for the size of the particular petitions. There is no discussion whatsoever, not even a legitimate observation as to what border means or how it works. It simply is a comment, and he's taking one word from that statute. And by the way, this section, section 5-7-3-1, wasn't enacted in 1936. It came a couple years later. I believe it was 1941. But either way, the point is this. Municipalities are creatures of statute. During incorporation, the village decided that its corporate boundaries would end right at the southern border of where my client's disconnect territory is. That's what they decided. It had legal effect in the Wasco Sanitary District case. It has legal effect going forward. It has legal effect for the Forest Preserve and the operation of that particular statute. It has legal effect for our client. Border means the border. The border that was defined here is the corporate limit, the actual limits of municipal authority and right. There is no more simple way, plain meaning way, easily operative way of deciding what a border is. The notion that other courts didn't decide this, perhaps incorporators in their council didn't, add an unincorporated area in the middle of their map that they wanted to incorporate. They did this purposely, and the record is clear. They had it in there originally, and they took it out. The notion that something is somehow in the village and not in the village at the same time we submit is impossibility, and borders have that distinction. This border is about municipal authority and its line, and interpretation of statute needs to be done in favor of disconnection. If we reverse the trial court and allow the disconnection, will your property still be within the boundaries of Campton Hills, or will you be outside the boundaries of Campton Hills? We will be outside the boundaries, and I will show you graphically on their handy map. What you will do is you will draw a red line. As you can see at the bottom, the key says, Campton Hills boundary. You will extend the red line around the yellow parcel, which is the Foxmouth petition, and it will be outside the boundaries, exactly like this particular parcel is. That's what will happen. Your Honor, thank you. One other question. Apparently the trial court decided on the first issue finding that it wasn't met. If we decide that that was incorrect, don't we still need more hearing to determine the rest of the issues? It's my understanding from the record, and I suppose that this was the only issue presented to the court, and at that time there were no other issues. Everything else, all the other disconnection aspects were satisfied. I understand that, and I don't have the record in front of me to confirm that, but I believe all those other issues were satisfied, save for the border and what was raised as the only bounded argument but not decided by the trial court. I suppose remand might be necessary to make sure that the record is accurate in that regard, but I don't see the other five requirements being impacted at all. All right, well, we can't put anything through the forest, or not we, Campton Hills can't put anything through the Forest Preserve District, and if you're out, Campton Hills can't put anything else through your property, so aren't there issues about city services, city issues that would... The village of Campton Hills provides no city services, and the trial court record is clear on that. All right. I mean, the only services they provide is the police department and the sheriff's station. Those are pretty significant city services. Right, and it would go back to the way it was before. I mean, they provide no services to this Forest Preserve District, and the sheriff's department patrols our area and patrols the Fox Creek area and would do so just the same. There was, in fact, at the time of judgment, a sheriff's substation about 150 yards from this particular area. Well, from what you say, it sounds like you're in a fire protection district that is different than the fire protection district that covers the rest of Campton Hills. That's correct. For example, the Wasco Sanitary District doesn't cover all of Campton Hills. It covers about four or five communities within a certain area. It's the same thing. There are fire protection districts. Well, the village of Campton Hills doesn't provide fire services. It doesn't provide garbage cleanup. It doesn't provide any of that. Sanitation and sewer and water are provided by the district, not by the village. Thank you, Your Honor. I have nothing further. I appreciate the time today. I understand that this can be somewhat of a complex issue, and I appreciate the opportunity to discuss today. We ask that the court reverse, outright, and if not reverse and remand this case back down to the trial court for a decision. I'm not consistent with that order. Thank you. Thank you, Your Honor. Thank you, counsel. At this time, the court will take the matter under advisement and render a decision in due course. The court stands in recess.